**J.E.M. and S.J.B., Individually and as next friend of J.B., Jr., A Minor, Appellants,**

v.

**FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellee.**

No. 01–95–01127–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 1, 1996.

---

1. We also held that based on *Sodipo,* such error was not subject to a harm analysis. *Id.*

Kenneth W. Lewis, Brett S. Thomas, Beaumont, for Appellants.

Susan C. Stevenson, Houston, for Appellee.

Before COHEN, WILSON and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

This is an appeal from a summary judgment rendered in favor of Fidelity & Casualty Company of New York (Fidelity). Fidelity filed a declaratory judgment action to determine its duty to defend James B. and Barbara B. (the defendants) in the underlying tort lawsuit filed by J.E.M. and S.J.B. (the plaintiffs) below. The trial court granted summary judgment declaring that the defendants' homeowner policy provided no coverage for J.E.M. and S.J.B.'s claims and that Fidelity had no duty to defend the defendant in the underlying lawsuit.

In September 1990, Fidelity issued a standard homeowner's policy to the defendants. The policy included coverage for personal liability, but excluded coverage for bodily injury or property damage caused intentionally by or at the direction of the insured or to sickness or disease transmitted through sexual contact.[1]

In October 1992, J.E.M. and S.J.B. sued

---

1. The policy exclusion provided:

Coverage D [for personal liability] shall not apply:

. . . .

5. to bodily injury or property damaged caused intentionally by or at the direction on the insured;

. . . .

11. to bodily injury or property damage which arises out of the transmission of sick-

the defendants.[2] The petition alleges that James B. sexually abused his stepdaughter, J.E.M., in 1977, 1978, and 1979. The petition also alleges that James B. sexually abused his step-grandson, J.B., Jr., during December 1990, and that the sexual abuse was "either intentional torts or the result of uncontrolled sexual urges brought about by an underlying psychosexual disorder." The petition states that James B. "was negligent in failing to inform other responsible adults of his conduct, in failing to seek professional held, and in continuing to allow himself to be alone with his stepdaughter and step-grandson."

The defendants demanded Fidelity provide them a defense in the sexual abuse lawsuit according to the terms of their homeowner's policy. By letter dated November 9, 1992, Fidelity agreed to defend them under a reservation of rights.

In April, 1994, another of the defendants' insurers filed a declaratory judgment action to construe the terms of its policy. Fidelity intervened and J.E.M. and S.J.B. were added to that suit. Fidelity moved for summary judgment, which the trial court granted, declaring (1) that the policy provided no coverage to the defendants for J.E.M.'s and S.J.B.'s claims, and (2) that Fidelity had no duty to defend them. In eight points of error, J.E.M. and S.J.B. contend the trial court erred by granting Fidelity's motion for summary judgment.

Summary judgment is proper only when a movant establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Bangert v. Baylor College of Medicine,* 881 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

**1. Justiciability of duty to defend issue**

■ In point of error one, the plaintiffs argue that the summary judgment was improper because the issue of whether Fidelity owed a duty to defend the defendant was not a justiciable issue. Unless there is a justicia-

ble issue, the trial court does not have subject matter jurisdiction under the Declaratory Judgment Act. TEX. CIV. PRAC. & REM. CODE §§ 37.002–37.011 (1996).

■ An interested party under a written contract whose rights and legal relations are at issue may ask the court to resolve questions of construction or validity arising under the contract. TEX. CIV. PRAC. & REM. CODE § 37.004(a); *Sanford v. Liberty Mut. Fire Ins. Co.,* 845 S.W.2d 354, 357 (Tex. App.—Houston [1st Dist.] 1992), *writ denied,* 879 S.W.2d 9 (Tex.1994). Whether an insurer has a duty to defend presents a justiciable question suitable for a declaratory judgment action. *Firemen's Ins. Co. v. Burch,* 442 S.W.2d 331, 332 (Tex.1968); *Sanford,* 845 S.W.2d at 357.

■ The plaintiffs argue, without authority, that before a justiciable issue is presented, the insurer must first deny coverage and refuse to defend unconditionally. We disagree. The purpose of a declaratory judgment is to obtain a clarification of one's rights. *Frost v. Sun Oil Co.,* 560 S.W.2d 467, 473 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). It is preventative in nature and is intended as a means for determining the rights of parties when a controversy has arisen, even before any wrong has actually been committed. *Donald v. Carr,* 407 S.W.2d 288, 292 (Tex.Civ.App.—Dallas 1966, no writ). The purpose of the Declaratory Judgment Act would be defeated if we were to require Fidelity to take a position on coverage, and possibly breach its contract, before filing a declaratory judgment action seeking a construction of that contract.

The issue of whether Fidelity owed the defendants a duty to defend was a justiciable issue. We overrule point of error one.

**2. Justiciability of duty to indemnify**

■ In a related point, the plaintiffs argue that the issue of whether Fidelity owed a duty to indemnify the defendant was premature, thus not a justiciable issue. We agree. The trial court has no jurisdiction to declare

---

ness or disease by an insured through sexual contact.

**2.** *J.E.M. v. J.M.B.,* Cause No. 92–CV–0995, 212th District Court, Galveston County, Texas.

the insurer's liability to indemnify its insured for damages that might be assessed against the insured in a pending lawsuit. *Burch,* 442 S.W.2d at 333–35. Any determination of an insurer's duty to pay would be hypothetical before judgment is granted against the insured, and the court's opinion would be purely advisory. *Id.*

Fidelity argues this case is distinguishable from *Burch* because it presented evidence to the trial court that it had tendered its entire policy limits to settle the plaintiffs' claims against Barbara B. Thus, Fidelity argues that the issue is whether it owed a duty to further indemnify James B. in light of the fact that the policy limits had been exhausted by settling the claims against Barbara B. Fidelity contends that under these circumstances, the issue of its duty to indemnify James B. would be ripe because it would not be contingent on proof of the evidence adduced in the underlying lawsuit, but would only require proof that the policy had been exhausted.

While this argument may have merit, it was not properly presented to the trial court. Fidelity presented evidence that it had exhausted its policy limits in its reply to the plaintiffs' response to its motion for summary judgment. Fidelity filed its reply, with the evidence of settlement, on the day of the summary judgment hearing. Summary judgment evidence may be filed late only with leave of court. *Benchmark Bank v. Crowder,* 919 S.W.2d 657, 663 (Tex.1996). Therefore, this evidence will not be considered as being before the trial court. *Id.*

In the absence of any summary judgment evidence showing that the policy was exhausted prior to trial, we must conclude that the rule of law in *Burch* applies. Because the underlying tort suit had not yet reached a verdict at the time the summary judgment was entered, the issue was not yet justiciable. We sustain point of error four and reform the judgment to delete the declaration that Fidelity has no duty to pay any judgment which may be rendered in the underlying lawsuit.

### 3. Sufficiency of reservation of rights letter

In points of error two and three, the plaintiffs contend Fidelity waived its right to contest coverage because its reservation of rights letter was ambiguous. Waiver or estoppel may preclude an insurer from forfeiting a policy because of the insured's failure to comply with a term of the policy, but these doctrines do not normally operate to preclude the insurer's "no coverage" defense. *Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 602–603 (Tex.1988). However, if an insurer assumes the insured's defense without obtaining a non-waiver agreement or a reservation of rights, and the insurer has knowledge of facts indicating noncoverage, the insurer waives all defenses, including the defense of "no coverage." *Farmers Texas County Mut. Ins. Co. v. Wilkinson,* 601 S.W.2d 520, 521–22 (Tex.Civ. App.—Austin 1980, writ ref'd n.r.e.).

The plaintiffs argue that Fidelity's reservation of rights letter was insufficient to preserve its "no coverage" defense. The reservation of rights letter that was sent by Fidelity's adjuster to the defendant provided:

> As you know per our discussion of November 5, 1992, we represent Fidelity & Casualty Company, the insurance carrier for [the defendants] under the above captioned policy. You may also be aware that we have been asked to investigate and defend a claim involving the above captioned. *The purpose of this letter is to inform you with respect to its investigation of this matter, or any claims arising out of it, the negotiation or settlement of any claims, or in the undertaking of the defense of the lawsuit, Fidelity & Casualty reserves the right to assert any and all defenses it may have as to the claims alleged against you.*
>
> According to the Plaintiff's Original Petition sexual offenses against the plaintiff [J.E.M.] are believed to have occurred one or more times in 1977, 1978, and 1979. Your policy of insurance with Fidelity & Casualty Company, as stated above, was from 9/5/90 to 9/5/91. *Consequently, you would have no insurance coverage for any of the allegations regarding [J.E.M.] be-*

*cause the allegations occurred outside of your policy effective dates.* We would instruct you to immediately place Farmers Insurance Company on notice of this claim as those policies were in effect during that time. They will need to become involved immediately in defense of this suit.

*The petition also alleges intentional acts and we wish to advise you that any covered allegations which are the result of any intentional act will not be covered. Please refer to your Homeowners Policy Coverage D Exclusions—Coverage D. shall not apply: (5.) To bodily injury or property damage caused intentionally by or at the direction of the insured;*

The petition also alleges damages as a result of sexual acts. I wish to direct you attention to Coverage D—Personal Liability Exclusions—Coverage D shall not apply: (11.) To bodily injury or property damages which arises out of the transmission of sickness or disease by an insured through sexual contact.

We also wish to advise you that the petition does not pray for damages in a specific amount and may result in a verdict in excess of your policy limits of $50,000. *We therefore wish to advise you that you may, at your own expense, retain outside counsel to oversee you in this litigation. We are not suggesting that you do so but merely advising you of your right.*

*We additionally reserve our right to file a Declaratory Judgment action at any time prior to or after the conclusion of this litigation.*

We will continue to provide a defense to you until these coverage issues are resolved. In the meantime we will be researching the aforementioned coverage issues and will advise you immediately of our determination of coverage and if we will continue to provide you with a defense. (Emphasis added).

■ The plaintiffs argue that the reservation of rights letter is insufficient to preserve a "no coverage" defense because (1) it never categorically denies coverage; (2) does not reference specific policy provisions on which the insurer is relying; (3) and does not inform the defendants of a potential conflict

of interest between themselves and the insurance company.

■ We can find no authority to require Fidelity to categorically deny coverage before offering to defend the defendants under a reservation of rights. One purpose of a reservation of rights letter is to allow the insurer to provide a defense for its insured while it investigates coverage issues. The insurer determines its duty to defend based upon the allegations made in the underlying suit considered in light of the policy provisions. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 24–25 (Tex.1965). In contrast, the duty to indemnify is determined from the actual underlying facts which result in liability of the insured. *Cluett v. Medical Protective Co.,* 829 S.W.2d 822, 828 (Tex.App.—Dallas 1992, writ denied). Because the facts giving rise to the insured's liability are often not developed until trial, it makes no sense to require the insurance company to take a position on the ultimate coverage issues before it offers the insured a conditional defense. Therefore, Fidelity was not required to deny coverage in its reservation of rights letter.

■ Next, the plaintiffs contend the letter is insufficient because it does not identify the policy provisions on which it bases its coverage defenses. We disagree. The letter specifically points out that none of J.E.M.'s claims are covered because they occurred outside the effective dates of the policy. The letter also points out that injury caused by intentional acts or sexual contact will not be covered, and specifically refers to Coverage D—personal liability exclusions (5) & (11). The letter points out that the policy limit is $50,000, and that it will not be liable for damages in excess of that amount. These are the same provisions Fidelity relied on in its motion for summary judgment.

■ Finally, the plaintiffs argue that the letter does not adequately advise the defendants of the potential conflict of interest between themselves and Fidelity. In *Employers Casualty Co. v. Tilley,* 496 S.W.2d 552, 559 (Tex.1973), the insurer provided its insured a generic nonwaiver agreement that

did not mention a possible coverage defense resulting from the insured's delay in providing notice. The court held the nonwaiver agreement did not authorize the insurer to use the same attorney to defend the insured and to work on the coverage issues because it did not inform the insured of the conflict and give him the opportunity to employ his own counsel. *Id.* at 560.

This case does not present a *Tilley* problem because there is no allegation that Fidelity used the same attorneys to defend the defendants that it used to determine coverage issues. Furthermore, the reservation of rights letter in this case detailed specific coverage problems that the defendants might face, and informed them they had the right to seek outside counsel.

This case is also distinguishable from *Wilkinson* in which the court held that the insurer's reservation of rights letter was ambiguous because the insurer sent the insured two letters on the same day; one was a reservation of rights and the other was an offer of an unconditional defense. 601 S.W.2d at 521. Because the two letters were inconsistent, the reservation of rights letter was ineffective. Therefore, the insurer waived its right to contest coverage. *Id.* at 522.

The present case is similar to *Ideal Mut. Ins. Co. v. Myers,* 789 F.2d 1196, 1201 (5th Cir.1986) (applying Texas law), in which the insured claimed the reservation of rights letter was insufficient because it did not (1) identify the insurer; (2) inform the insured of a conflict of interest; and (3) advise the insured of its right to secure independent counsel. The court held the reservation was sufficient because its specifically identified the policy, informed the insured that a lawyer had been retained to represent him, and told the insured of the results of the insurer's initial investigation and its reservation of rights. *Id.* The letter also stated:

> [Y]ou are at liberty to secure counsel of your own choice, at your expense to represent you in regard to the amount [sued] which is in excess of your insurance coverage ... [and] that as to such excess there could be a conflict of interest between your insurers and the [insured] and that if negligence of the insurers causes a judgment to

be rendered against the [insured] in excess of the insurance limits, it could be that the company might be responsible for the excess judgment.

*Id.* at 1201.

The reservation of rights letter in this case identifies the policy, informs the defendants that Fidelity will provide a defense under a reservation of rights, points out specific policy provisions that may result in noncoverage, and tells the defendants that because there may be liability in excess of the policy limits, they have the right to secure independent counsel. Although the words "conflict of interest" do not appear in the letter, the letter makes clear the possibility that Fidelity may have an adverse position to the defendants on the issue of coverage. The letter also informs the defendants that they have the right to secure independent counsel.

The reservation of rights letter in this case is clear and unambiguous as a matter of law. We overrule points of error two and three.

### 4. Duty to defend allegations of sexual molestation

In points of error five, six, and seven, the plaintiffs contend the trial court erred by ruling that Fidelity had no duty to defend the defendant against allegations of sexual abuse. Specifically, the plaintiffs argue that although the defendant may have intended the "touching incidents" that give rise to the sexual abuse allegations, he did not intend to cause any injury. Absent an intent to injure, the plaintiffs argue, exception (5) to the personal liability coverage does not apply.

The argument that sexual abuse is not an intentional injury has been rejected by the two appellate courts in Texas to address the issue. In *Maayeh v. Trinity Lloyds Ins. Co.,* 850 S.W.2d 193, 197 (Tex.App.—Dallas 1992, no writ), the petition in the underlying tort suit alleged that the insured had repeatedly sexually molested his stepdaughter. The trial court granted the insurer's motion for summary judgment. The appellate court affirmed and held that the insurer had no duty to defend the insured because the policy excluded bodily injury "caused intentionally by or at the direction of the insured." *Id.* at

195. The court determined that the intent to injure could be inferred as a matter of law because the insured's sexual behavior with the minor "was substantially certain to cause her harm regardless of any protestations that he did not mean to cause her harm." *Id.* at 197.

In *Allen v. Automobile Ins. Co.*, 892 S.W.2d 198, 199–200 (Tex.App.—Houston [14th Dist.] 1994, no writ), the petition in the underlying lawsuit alleged that the insured sexually molested a minor. The insurer sought a declaratory judgment because the policy excluded coverage for bodily injury caused intentionally by the insured. The trial court granted the insurer's motion for summary judgment. The court of appeals affirmed and held that sexual molestation is an intentional injury as a matter of law. *Id.* at 199. The act of sexual molestation is the injury and, because there cannot be one without the other, the intent to molest is the same as the intent to harm. *Id.* at 200.

This case is distinguishable from *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 377 (Tex.1993), in which the insured was sued by a former girlfriend for negligently infecting her with genital herpes. The court reversed a summary judgment because there was a fact question about whether the insured intended to injure the plaintiff. *Id.* at 382. However, the court distinguished the sexual molestation cases in which intent to injure was inferred as a matter of law. *Id.* at 379. Because the case involved consensual sex between consenting adults, the court refused to infer any intent to injure. *Id.* at 379–80.

 This case involved an adult's sexual molestation of two children. The general rule nationwide is to infer intent to injure in such a situation.[3] Federal courts applying

Texas law have also followed this rule.[4] We agree that sexual molestation of a minor by an adult is an intentional injury as a matter of law.

The petition in this case alleges that the defendant had sexual intercourse with his stepdaughter while she was a minor residing in his home. The petition also alleges that the defendant committed "varied and sordid sexual offenses" against his six-year-old step-grandson. The homeowners policy at issue excludes coverage for bodily injury "caused intentionally by or at the direction of the insured." Because intent to injure can be inferred, the policy provides no coverage. If a petition only alleges facts that, even if true, are excluded by the policy, the insurer does not have a duty to defend. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982); *Maayeh*, 850 S.W.2d at 195. The trial court did not err by granting Fidelity's motion for summary judgment on the issue of duty to defend.

We overrule points of error five, six, and seven.

### 5. Motion for continuance to conduct discovery

 In point of error eight, the plaintiffs contend the trial court erred by entering summary judgment before they were allowed the opportunity to depose Bernard Perkins, a senior underwriter for Fidelity. Although it is not clear from the point of error, it appears that the plaintiffs believe the trial court erred by refusing to grant them a continuance so that they could obtain Perkins' deposition.

The plaintiffs argued in their response to the motion for summary judgment that they needed more time to conduct discovery. The

3. *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 161, 581 N.Y.S.2d 142, 589 N.E.2d 365, 370 (N.Y.1992); *N.N. v. Moraine Mut. Ins. Co.*, 153 Wis.2d 84, 97, 450 N.W.2d 445, 450 (Wis.1990); *Horace Mann. Ins. v. Leeber*, 180 W.Va. 375, 381 376 S.E.2d 581, 587 (W.Va.1988); *Rodriguez v. Williams*, 107 Wash.2d 381, 387, 729 P.2d 627, 629 (Wash.1986); *Estate of Lehmann v. Metzger*, 355 N.W.2d 425, 426 (Minn.1984); *Horace Mann Ins. Co. v. ISD*, 355 N.W.2d 413, 416 (Minn. 1984); *CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 93, 666 S.W.2d 689, 691 (Ark.1984); *Fireman's*

*Fund Ins. Co. v. Hill*, 314 N.W.2d 834, 835 (Minn.1982); *Allstate Ins. Co. v. Kim W.*, 160 Cal.App.3d 326, 332–33, 206 Cal.Rptr. 609, 613 (Cal.Ct.App.1984).

4. *Commercial Union Ins. Co. v. Roberts*, 7 F.3d 86, 87 (5th Cir.1993); *Allstate Ins. Co. v. Mauldin*, 869 F.Supp. 478, 480 (W.D.Tex.1994); *Government Employees Ins. Co. v. McGinty*, 832 F.Supp. 1092, 1094–95 (W.D.Tex.1993), aff'd, 37 F.3d 633 (5th Cir.1994).

response was verified by an affidavit of the plaintiffs' lawyer. In their response, the plaintiffs explained the reason they needed additional discovery. Evidently, Fidelity could not find the defendants' policy and thus did not attach it to its motion for summary judgment. Instead, Fidelity attached a copy of a policy that it said was representative of the policies being written in Texas at the time the defendants purchased their policy. The plaintiffs explained in their response that they wished to depose Bernard Perkins, the underwriter for Fidelity whose affidavit was attached to the copy of the representative policy. The plaintiffs had noticed Perkins' deposition, but Fidelity refused to produce him. The plaintiffs attached a copy of Perkins' non-appearance to their response to summary judgment. The plaintiffs contend the trial court erred by entering summary judgment before they had the opportunity to depose Perkins about the representative policy that Fidelity had attached to its motion for summary judgment.

 Under Tex.R. Civ. P. 166a(g), when it appears from the affidavits of a party opposing a motion for summary judgment that he cannot present by affidavit facts sufficient to justify his opposition, the trial court may order a continuance to permit discovery to be had. *Levinthal v. Kelsey–Seybold Clinic, P.A.,* 902 S.W.2d 508, 510 (Tex.App.—Houston [1st Dist.] 1994, no writ). Therefore, it was within the court's discretion to grant a continuance until the requested discovery was completed. *Id.* We will not disturb the trial court's denial of a motion for continuance except for a clear abuse of discretion. *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986); *Verkin v. Southwest Ctr. One, Ltd.,* 784 S.W.2d 92, 94 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

In *Levinthal,* this Court considered the following nonexclusive list of factors in deciding whether the trial court had abused its discretion by refusing to continue a motion for summary judgment: (1) the length of time the case had been on file; (2) the materiality of the discovery sought; and (3) whether due diligence was exercised in obtaining the discovery. 902 S.W.2d at 508. Because the case had been on file for only three months, the discovery sought was material to the plaintiff's claims, and the plaintiff had promptly filed his discovery requests at the same time he filed his lawsuit, this Court held the trial court abused its discretion by denying the plaintiff's motion for continuance. *Id.* at 512.

In this case, the plaintiffs did not conduct any discovery for over one year. However, as soon as Fidelity filed its motion for summary judgment relying on the representative policy and Perkins' affidavit, the plaintiffs attempted to notice Perkins' deposition. Even though the case had been on file for over a year, the plaintiffs attempted to obtain Perkins' deposition as soon as they realized they would need to question him about the representative policy relied on by Fidelity. Therefore, factors one and three would support the plaintiffs' request for a continuance.

However, the plaintiffs are unable in this case to show that the discovery sought is material. The plaintiffs contend they need to depose Perkins about the representative policy Fidelity attached to its motion for summary judgment. However, the record shows that Fidelity located the original policy several days before the summary judgment hearing. A copy of the original policy was provided to the plaintiffs and another copy was filed with the court. It is undisputed that the original policy was identical to the representative copy Fidelity had attached to its motion for summary judgment.

In *Clemons v. State Farm Fire & Casualty Co.,* 879 S.W.2d 385 (Tex.App.—Houston [14th Dist.] 1994, no writ), the plaintiffs sued their insurer alleging that the insurer had breached its duty to defend them in a prior lawsuit. *Id.* at 388. The plaintiffs contended the trial court erred by denying their motion for continuance so they could depose a representative about the undisputed terms of the insurance policy at issue in the case. *Id.* at 394. The court held that no further discovery was necessary because the terms of the policy and the pleadings alone defined the insurer's duty to defend. *Id.*

In this case, the original policy was identical to the policy the Fidelity had attached to its motion. The pleadings and the terms of the policy were all the trial court needed to

determine Fidelity's duty to defend. Perkins' deposition would have added nothing for the trial court to consider. We cannot say the trial court abused its discretion by refusing to continue the summary judgment hearing.

We overrule point of error eight.

We reform the judgment to delete the declaration that Fidelity has no duty to pay any judgment which may be rendered in the underlying lawsuit. We affirm the remaining portions of the judgment as reformed.